# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **LOUIS FRANK JACKSON,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **1:10-CV-126-TMH** |
| | ) | |
| **DOTHAN CITY POLICE** | ) | |
| **DEPARTMENT,** *et al.*, | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## SPECIAL REPORT TO MAGISTRATE

Come now the Defendants, Jeremy Kendrick, Jon Givens, Ray Mock,

Taiwan Truitt, and Dothan City Police Department, pursuant to this Court's Order

of March 17, 2010, and would report to the Magistrate as follows:

## Facts

In June, 2009, Investigator David J. Kendrick, of the Dothan

Vice/Intelligence Unit (hereinafter "Kendrick"), received confidential information

that drugs were being sold from, and stored, at 501 Caroline Street, Dothan,

Alabama.  On June 10, 2009, Kendrick's confidential informant went to 501

Caroline Street and purchased drugs.  At 8:55 p.m., Kendrick obtained a search

warrant from Houston County Circuit Judge Brad Mendheim for the home located

at 501 Caroline Street.  The information obtained from the informant was that there

were possibly several guns in the home, therefore, the narcotics' unit requested assistance from the Dothan Special Response Team (hereinafter "SRT") in executing the search warrant.  (Ex. "A", Kendrick Affidavit).

At approximately 9:45:43, the Dothan SRT attempted entry on the home to secure all the occupants.  The initial plan was for SRT to make entry at the rear door while Vice officers covered the front of the house.  When SRT attempted entry, they discovered that the rear door was for a utility room with no access to the interior of the residence.  SRT members then immediately divided and went around both sides of the house to make entry through a side and front door.  Once inside, SRT members found a black male, later identified as Louis Frank Jackson, (hereinafter "Jackson") in the bathroom - attempting to flush a large bag down the toilet.  There was also a handgun on the floor beside the toilet.  The SRT members pulled Jackson out of the bathroom to prevent the destruction of evidence and to get him away from the handgun.  (Ex. "B", Nelms Affidavit).  Jackson was passed from one SRT member to another down the hallway and he continued to struggle. When he reached the living room SRT member Brandon Thompson put him on the floor and attempted to secure him in handcuffs.  Jackson continued to resist the officer's attempt to handcuff him.  (Ex. "C", Thompson Affidavit).  Jackson was eventually secured by Officers Givens and Truitt and taken outside of the house. (Ex. "D", Givens Affidavit; Ex. "E", Truitt Affidavit).  At 9:48:06, the SRT gave

the all clear and Vice/Intelligence officers entered the home to search for drugs. (Ex. "F", Holley Affidavit; Ex. "A", Kendrick Affidavit).  Inside the toilet in the bathroom where Jackson was discovered, Officers Holley and Kendrick found a large bag containing several small bags of green plant material believed to be marijuana and a block covered in tinfoil.  When the block of tinfoil was unwrapped, the officers found $909.00 in U.S. currency.  (Ex. "A", Kendrick Affidavit; Ex. "G", Photos).  A search of the attic revealed a large bag containing green plant material.  All the suspected drug material was seized and turned over to the Alabama Department of Forensic Science.  (Ex. "A", Kendrick Affidavit; Ex. "H", Certificate of Analysis). The handgun and money were placed in the Dothan Police Department evidence vault.  (Ex. "A", Kendrick Affidavit).

Mr. Jackson was transported to the Vice/Intelligence office along with the female that was in the house.  Mr. Jackson refused to make a statement.  Officer Rhodes was sent to transport him to the Dothan City jail on the charge of unlawful possession of a controlled substance.  Mr. Jackson complained to officer Rhodes that his wrist hurt and he was taken to the Southeast Alabama Medical Center Hospital for evaluation.  (Ex. "R", Rhodes Affidavit).  Mr. Jackson's left wrist had a contusion from a handcuff and was X-rayed.  No fractures were found.  He complained of a head injury and was given a CT scan with no abnormalities found. (Ex. "I", Hospital Records).  Jackson was returned to the Dothan City jail and

subsequently transferred to the Houston County Jail on the felony charge.  On June 12, 2009, the Houston County Jail records indicate no medical problem when he was booked into the Houston County Jail.  (Ex. "J", Inmate Screening Form).  On August 23, 2009, Jackson complained of numbness in his face and the doctor's diagnosis was Bell's palsy.  (Ex. "N", Houston County Jail Medical Records).  On January 14, 2010, Jackson was interviewed by the Alabama Board of Pardons and Parole regarding his Youthful Offender application on the charge of unlawful possession of a controlled substance and indicated he had no physical or mental disabilities.  (Ex. "K", Pardon and Parole Report).  On March 2, 2010, Jackson was seen by Dr. Alan D. Prince for numbness in his face.  Dr. Prince also diagnosed him as having Bell's palsy.  (Ex. "S", Dr. Prince's Report).  There is no evidence in the medical records that a causal connection exists between Jackson's on-set of Bell's palsy in late August 2009, and his arrest by the Dothan Police Department on June 10, 2009.

The officers used diminimus force to subdue and control Jackson during the search and arrest.  This is evidenced by his minor contusion and bruises which are documented in the medical records.

Kendrick obtained a warrant on Jackson on June 12, 2009.  (Ex. "L", Warrant).  Jackson was indicted for unlawful possession of a controlled substance (marijuana) on October 22, 2009.  On March 11, 2010, Jackson was convicted of

unlawful possession of a controlled substance and sentenced to six years in prison. (Ex. "M", Jury conviction, and Sentencing Order).

## RESPONSE TO SPECIFIC ALLEGATIONS

### Excessive Force

The officers did not violate Jackson's constitutional rights under the Fourth Amendment.  When a person alleges excessive force, it must be reviewed under the Fourth Amendment objection reasonable standard.  Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1998).  Whether the use of force used by an officer is unreasonable depends on several factors:  (1) the severity of the crime, (2) if the suspect poses an immediate threat and (3) whether the suspect is resisting or fleeing.  See Graham 490 U.S. at 394, 109 S. Ct. 1865.  In this case, Jackson was in the process of attempting to destroy evidence by flushing it down the toilet when the officers entered the house and found him in the bathroom. Jackson had a gun next to the toilet when the officers entered the bathroom.  The officers then pulled him out of the bathroom.  Jackson resisted the officers who had to struggle with him in the hallway and the living room in order to get him handcuffed.  (Ex. "E", Truitt Affidavit; Ex. "D", Givens Affidavit; Ex. "C", Thompson Affidavit).  Jackson was charged with felony possession of a controlled substance.  Jackson was a danger to the officers based on the fact he had a firearm with him in the bathroom, and he refused to obey instructions and commands.

Jackson actively resisted the officers and fought with them when they tried to subdue him.  (Ex. "E", Truitt Affidavit; Ex. "D", Givens Affidavit; Ex. "C", Thompson Affidavit).

Another key factor the Eleventh Circuit looks at is the extent of the injury. Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986).  Jackson was taken to the Southeast Alabama Medical Center for an evaluation.  The medical reports state Jackson had an abrasion over his right eye, a hematoma (a bruise) on the back left side of his head, and tenderness and an abrasion on his left wrist.  (Ex. "I", Hospital records).  Jackson had four x-rays of his wrist and no acute fractures or dislocations were found.  He was given a CT scan of his head and spine, and no hemorrhage, mass or abnormalities were found.  (Ex. "I", Hospital records). Jackson was released from the hospital and taken to the Dothan City jail.  On June 12, 2009, Jackson was transferred to the Houston County Jail on the felony charge. The Houston County Jail completed a medical screening form on Jackson and he had no visible signs of trauma, no obvious pain, nor was he in need of immediate emergency or doctor's care.  The jail did note that "Jackson had attempted suicide and was thinking about it now."  (Ex. "J", Houston County Jail Inmate Medical Screening Form).  The medical records from the Houston County Jail indicate that on August 23, 2009, Jackson's face felt numb; this was 74 days after his arrest. The doctor diagnosed him with Bell's palsy.  (Ex. "N", Houston County Jail

medical records).   Jackson was seen by Dr. Prince on March 2, 2010, and was

diagnosed as having Bell's palsy.  There is no indication in the medical records

that Jackson has 20% nerve loss as stated in his complaint, nor is there any

evidence that his arrest of June 10, 2009, caused or contributed to the onset of his

Bell's palsy.  Jackson's minor abrasions and contusions were the result of his

physical struggle with police officers when they were trying to subdue him and do

not amount to a Fourth Amendment violation.

### State Law Claim of Illegal Imprisonment

Jackson alleges that he was falsely imprisoned as a result of the search of his

home on June 10, 2009.  (Document 7, P. 3, Complaint).  False or illegal

imprisonment consists of the unlawful detention of a person of another for any

length of time whereby he is deprived of his personal liberty.  Ala. Code § 6-5-170

(1975).  In this case the officers executed a valid search warrant at Jackson's home.

During the search, the police recovered 113.40 grams of marijuana.  (Ex. "H",

Certificate of Analysis).  Jackson had a bond in the amount of $15,000.00 which

he could not make or chose not to make, to be released.  Jackson was arrested,

indicted, and convicted of unlawful possession of a controlled substance.  (Ex. "L",

Warrant; Ex. "O", Indictment; Ex. "M", Jury Conviction & Sentencing Order).

Jackson's conviction on the charges he was arrested on establishes that his

confinement in jail was not illegal.  Therefore, the claim of illegal imprisonment is due to be dismissed.

## **Breach of Privacy**

Jackson also alleges that his privacy was violated and the Defendants interpret this to be a Fourth Amendment claim regarding the search of the home at 501 Caroline Street, Dothan, Alabama.  The officers in this case had a valid search warrant for the home signed by a Houston County Circuit Court Judge.  (Ex. "P", Search warrant).  The officers did not violate Jackson's privacy or his Fourth Amendment right.  The search warrant gave the officers the legal right to enter Jackson's home and conduct the search.  Therefore, there was no breach of his privacy.  Additionally, under <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), a State inmate cannot bring a claim for damages under 42 U.S.C. § 1983 when a judgment in favor of the plaintiff would invalidate his conviction.  In this case the issue involves the search warrant which was upheld in the State case and helped secure the Plaintiff's convictions on the charge of unlawful possession of a controlled substance.

## **Qualified Immunity**

The Defendant officers are entitled to qualified immunity.  Government officials such as police officers who are performing discretionary functions are

generally shielded from liability from civil actions as long as the conduct does not

violate clearly established constitutional or statutory rights which they were aware.

Harlow v. Fitzgerald, 451 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed 2d 396 (1982).

The immunity defense is especially important in the context of street level police

work, which frequently requires quick and decisive action on the part of police

officers in the face of volatile and changing circumstances.  Harrell v. Decatur

County, 22 F.2d 1570, 1578 (11th Cir. 1994).  Police officers must be allowed to

perform their duties and make decisions without the fear of being sued.  To lightly

reject the defense of qualified immunity would hamper the officer's ability to make

discretionary calls, putting the officer and the public at risk.  Burrell v. Board of

Trustees of Georgia Military College, 970 F.2d 785, 794 (11th Cir. 1992).

Under the qualified immunity analysis the court must determine if the officer

was acting within the scope of his discretionary authority, when the alleged

unconstitutional act occurred.  Storck v. City of Coral Springs, 354 F.3d 1307,

1314 (11th Cir. 2003).  Once the officer has established that he was acting within

the scope of his discretionary authority, the burden shifts to the Plaintiff to

establish that qualified immunity does not apply.  Id.  To determine if the Plaintiff

has met his burden, the Supreme Court has set forth a two-part test. "The threshold

inquiry a court must undertake … is whether [the] Plaintiff's allegations, if true,

establish a constitutional violation."  Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct.

2508, 2513 153 L. Ed. 666 (2002).  "If no constitutional right would have been violated were the violations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation can be made out on the favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  The inquiry must be undertaken in light of the specific context of the case, "not as a broad general proposition."  <u>Saucier</u>, 533 U.S. 635 640 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987), the right the public official allegedly violated must have been clearly established in a more particularized and relevant sense so that "a reasonable official would understand that what he is doing violates the law."

All the Defendant officers were on duty with the Dothan Police Department's Vice/Intelligence unit when they served the search warrant on Jackson's home located at 501 Caroline Street.  The officers were also acting within the line and scope of their employment when they arrested Jackson for unlawful possession of a controlled substance.  The only Defendant to enter the house initially was Defendant Ray Mock who is also a member of the Dothan (SRT) team.  Defendant Mock did not see Jackson or assist in handcuffing him during the event.  (Ex. "Q", Mock Affidavit).  The SRT team members who did take control of Jackson were clearly acting in the course of their duties when they

removed Jackson out of the bathroom where he was trying to destroy evidence and had a gun on the floor beside the toilet.  This was a very tense and dangerous situation not only for the officers but also for Jackson, who luckily for him, did not try and pick up the weapon when the officers were removing him from the bathroom.  The officers needed to get Jackson out of the bathroom to prevent the destruction of the evidence and to get Jackson out of reach of the weapon.  The officers' limited use of force to remove Jackson and secure him in handcuffs does not amount to a violation of his civil rights which would deny the Defendants' defense of qualified immunity.

### Discretionary Function Immunity Under Alabama Code § 6-5-338

Alabama Code § 6-5-338(a) provides immunity to municipal law enforcement officers for tort liability arising out of the performance of any discretionary function within the line and scope of their law enforcement duties. To come within the protection of § 6-5-338, a municipal police officer must be engaged in a discretionary function with respect to the incident in question.  Swann v. City of Hueytown, 920 So. 2d 1075 (Ala. 2005) (under § 6-5-338, a law enforcement officer is entitled to state-agent immunity if the officer was performing a discretionary function).  Since the Alabama Supreme Court decided Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), it has analyzed immunity issues in

terms of "state agent" immunity rather than the dichotomy of ministerial versus discretionary function.

The Cranman court stated in pertinent part that:

"A state agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agents."

\*       \*       \*

(4)  exercising judgment in the enforcement of the criminal laws of the state, including, but not limited to, law enforcement officers arresting or attempting to arrest person.

Cranman, 742 So. 2d at 405.

Discretionary function immunity is withheld only if an officer acts were willful, or with malicious intent or in bad faith.  Ex parte Duvall, 782 So. 2d 244, 248 (Ala. 2000).  There is no evidence in this case that the Defendants acted willfully, maliciously or in bad faith.  Jackson has been convicted of the charge that was brought against him.  The officers were performing a discretionary function when they arrested Jackson and are entitled to immunity on the state law claim of illegal imprisonment.

## CITY OF DOTHAN POLICE DEPARTMENT

The amended complaint appears to list the Dothan Police Department as a Defendant. (Document 7, Amended Complaint) the Dothan Police Department is not a legal entity subject to suit or liability.  Dean v. Barber,

951 F.2d 1210 (11th Cir. 1992).  Therefore, if Jackson is bringing a claim

against the Dothan Police Department it is due to be dismissed.

## **AFFIRMATIVE DEFENSES**

1.   The Defendants assert the affirmative defense of qualified immunity.

2.   The Defendants assert the affirmative defense of good faith immunity.

3.   The Defendants assert the affirmative defense of discretionary function

     immunity under Ala. Code §6-5-338 (1975).

4.   The Defendants assert the affirmative defense of Res Judicata.

5.   The Defendants assert the affirmative defense of contributory negligence.

6.   The Defendants assert the affirmative defense the Plaintiff's Complaint

     fails to state a cause of action which relief may be granted.

7.   The Defendants deny all allegations set out in the Plaintiff's Complaint.

8.   The Defendants assert that the Plaintiff is not entitled to relief because he

     did not suffer a constitutional violation.

9.   The Defendants assert that Plaintiff cannot establish a Federal law claim

     under 42 U.S.C. §1983.

10.  The Defendants assert that Plaintiff assumed the risks of his conduct.

11.  The Defendants assert that Plaintiff was in the act of committing a crime

     at the time he was "injured."

12. Defendants assert that the Plaintiff's claim or parts thereof are barred by Heck v. Humphrey, 512 U.S. 477 (1994).

Dated this 28th day of April, 2010.

s/ Joe E. Herring, Jr.
Joe E. Herring, Jr. (HER038)
Assistant City Attorney
P.O. Box 2128
Dothan, AL  36302
(334) 615-3130

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I further certify that a copy of the foregoing has been served upon the following by placing same in the United States Mail, postage prepaid, on this the 28th day of April, 2010:

Louis Frank Jackson, #64004 - A-Pod
Houston County Jail
901 East Main Street
Dothan, AL  36301

s/ Joe E. Herring, Jr.
Of Counsel